## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## 09-20982 CIV COOKE/BANDSTRA

| | |
|---|---|
| ELIZABETH ESPINAL, individually and on behalf of a class of similarly situated individuals, ) ) ) | |
| *Plaintiff*, ) ) | |
| v. ) ) | **Class Action** |
| BURGER KING CORPORATION, a Delaware Corporation, ) ) ) | **Jury Trial Demanded** |
| ) ) | |
| *Defendant*. ) | |

## AMENDED CLASS ACTION COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Plaintiff Elizabeth Espinal brings this amended class action complaint against Defendant Burger King Corporation ("Burger King") to stop Defendant's practice of making illegal text message calls to cellular telephones, and to obtain redress for all persons injured by its conduct. Plaintiff, for her amended Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE CASE

1.   In a recent effort to promote new products on its menu, Burger King, the proprietor of one of the nation's largest fast-food restaurants, engaged in a relatively new and especially pernicious form of marketing: the transmission of unauthorized advertisements, in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

1

2. By effectuating these unauthorized text message calls (hereinafter, "wireless spam" or "SMS Messages"), Burger King has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

3. In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class of similarly situated individuals, brings this suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits unsolicited voice and text calls to cell phones.

4. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

**PARTIES**

5. Plaintiff is a citizen of New York. Plaintiff maintains an AT&T "FamilyTalk" cellular telephone plan on which Plaintiff's husband is an authorized user.

6. Defendant Burger King Corporation is a global chain of hamburger fast-food restaurants. It is a Delaware corporation with its principle place of business in Miami, Florida. It does business throughout the United States, including this district.

**JURISDICTION**

7. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different

from the Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under this subsection apply to the instant action.

## VENUE

8. Venue is proper in this district under 28 U.S.C. § 1391 (a)(1-2) as Defendant resides in this district, a substantial part of the events giving rise to the claims here asserted occurred in this district, and because Defendant requires, as reflected in the terms and conditions published on Defendant's website (www.burgerking.com), that all claims arising out of its website or any website operated on its behalf, including disputes involving SMS messages and mobile phone numbers obtained through such websites, to be governed by the substantive laws of the State of Florida and that any such claims, including those arising under federal law, be resolved in judicial proceedings commenced in this district.

## CONDUCT COMPLAINED OF

9. In recent years, marketers, who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail, have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

10. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 or so characters.

11. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is

successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

12. Unlike more conventional advertisements, wireless spam actually costs its recipients money because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive, or for a text plan that includes a number of messages, whether or not the message is authorized.

13. Over the course of several months in 2008, Defendant and its agents caused mass transmissions of wireless spam to the cell phones of what it hoped were potential customers of its new Steakhouse Burger and related food products.

14. Defendant caused such mass transmission of wireless spam to mobile phone numbers of Plaintiff and the Classes, which Defendant obtained through websites it owned or were operated on its behalf by third parties.

15. On or about April 11, 2008, Plaintiff's cell phone rang, indicating that a text call was being received.

16. The "from" field of the transmission was identified cryptically as "99134," which Plaintiff later learned was an abbreviated telephone number known as an SMS short code. The body of such text message read:

> TRY A NEW STEAKHOUSE BURGER WITH 100% ANGUS BEEF. OR KICK IT UP A NOTCH WITH A LOADED STEAKHOUSE BURGER. TRY ONE TODAY AT BK. REPLY STOP TO OPTOUT.

17. Immediately after receiving the above spam text message, Plaintiff responded, consistent with the instructions contained in Defendant's privacy policy and incorporated into the

terms and conditions of its website, by replying to 99134 with a text message that contained the word "Stop."

18.     Shortly thereafter, Plaintiff's phone received a text message from the SMS short code 99134 stating:

> THIS MSG CONFIRMS THAT YOU HAVE STOPPED THE SUBCRIPTION & WILL NO LONGER RECEIVE MSGS OR CHARGES FROM TEXTOPOLY SMS SERVICES.

19.     Two months later, on or about June 13, 2008, Plaintiff's phone again received a nearly identical (but for the opt-out provision) spam text message call from Defendant that read:

> TRY A NEW STEAKHOUSE BURGER WITH 100% ANGUS BEEF. OR KICK IT UP A NOTCH WITH A LOADED STEAKHOUSE BURGER. TRY ONE TODAY AT BK. REPLY OFF TO OPTOUT.

20.     Immediately after receiving the above spam text message, Plaintiff again responded, consistent with the instructions on Defendant's website, by replying to 99134 with a text message that contained the word "Off." Shortly thereafter, Plaintiff again received the opt-out confirmation text message identified in Paragraph 18.

21.     Yet again, two months later, on or about August 22, 2008, Plaintiff's phone received another spam text message call from Defendant:

> STOP BY BK FOR A REFRESHING MOCHA BK JOE ICED COFFEE, A PERFECT MIX OF RICH COFFEE AND CHOCOLATE SYRUP. AVAILABLE ANY TIME OF DAY. REPLY OFF TO OPTOUT.

22.     Immediately after receiving the above spam text message, Plaintiff again responded, consistent with the instructions on Defendant's website, by replying to 99134 via text message requesting that Defendant discontinue its transmission of wireless spam to Plaintiff's

cell phone and again, for the third time, received back the opt-out confirmation text message identified in Paragraph 18 above.

23. Despite these repeated assurances to the contrary, and despite Plaintiff repeatedly opting out consistent with the instructions on Defendant's website and in the SMS messages themselves, Defendant continued to willfully send unsolicited text message advertisements to Plaintiff's cellular telephone over the next several months, in knowing violation of Plaintiff's expressed intent and Defendant's own privacy policy.

24. At no time did Plaintiff consent to the receipt of such text messages from Defendant.

## CLASS ALLEGATIONS

25. Plaintiff brings this action, pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3), on behalf of herself and a class and subclass (the "Classes") defined below:

> A) The Class (the "Class") consisting of Plaintiff and all others nationwide who received one or more unauthorized text message advertisements on behalf of Defendant;
>
> B) The Subclass (the "Subclass") consisting of Plaintiff and all others nationwide who received one or more unauthorized text message advertisements on behalf of Defendant after affirmatively opting out;

26. Upon information and belief, there are over 1,000 members of both the Class and Subclass such that joinder of all members is impracticable.

27.     Common questions of law and fact exist as to all members of the Class and Subclass and such questions predominate over questions affecting Plaintiff or individual members. Common questions for the Class and/or the Subclass include:

    (a)     Is Defendant's conduct governed by the TCPA?

    (b)     Does the wireless spam Defendant distributed violate the TCPA?

    (c)     Are the Class and Subclass members entitled to treble damages based on the willfulness of Defendant's conduct?

    (d)     Does Defendant's failure to cease transmission of SMS spam to Plaintiff and the Subclass constitute a breach of contract?

28.     Plaintiff will fairly and adequately protect the interests of the Class and Subclass, her claims are typical of the claims of the members of the Class and Subclass, and she has retained counsel competent and experienced in similar class action litigation.

29.     A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the respective classes is impracticable, and (b) many members of the classes cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

**COUNT I**
**(Violation of the TCPA, 47 U.S.C. § 227: On behalf of the Class and Subclass)**

30.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

31.     Defendant made unsolicited commercial text calls to the wireless telephone numbers of the Class and Subclass using equipment that, upon information and belief, had the

capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

32.     These text calls were made without the prior express consent of the Plaintiff, the Class and the Subclass.

33.     Defendant has, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

34.     As a result of Defendant's illegal conduct, the members of the class suffered actual damages and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each such violation of the TCPA.

35.     Because Defendant's misconduct was willful and knowing, the Court should, pursuant to 47 U.S.C. §227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Class and Subclass.

## COUNT II
**(Breach of Contract on behalf of the Subclass)**

36.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

37.     Defendant's website terms and conditions provide, *inter alia*, that "[t]o opt out of . . . SMS communications, please follow the instructions in the . . . SMS message." By following such instructions on Defendant's website, members of the Subclass, pursuant to Defendant's website terms and conditions, form a contract with Defendant regarding the termination of SMS messages from Defendant.

38.     Defendant has failed to opt out Plaintiff and the other members of the Subclass from receiving further SMS spam after such persons followed Defendant's SMS opt out instructions.

39. Defendant's repeated failure to opt out Plaintiff and the other members of the Subclass of receiving further SMS spam constitutes a material breach of Defendant's website terms and conditions.

40. As a result of this conduct, Plaintiff and the members of the proposed Subclass have suffered damages because cellular telephone subscribers must pay their respective wireless service providers for each text message call they receive or for a text plan that includes a number of messages, whether or not the message is authorized.

WHEREFORE, Plaintiff Elizabeth Espinal, on behalf of herself and the Class and Subclass, prays for the following relief:

1. An order certifying the Class and Subclass as defined above;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant to cease all wireless spam activities;

4. An award of reasonable attorney's fees and costs; and

5. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried

Dated: July 9, 2009

Elizabeth Espinal, individually and on behalf of a class of similarly situated individuals


 /s/ David P. Healy
One of her attorneys

David P. Healy (0940410)
LAW OFFICES OF DAVID P. HEALY, PLC
2846-B Remington Green Cr.
Tallahassee, Florida 32308
Telephone: (850) 222-5400
Facsimile:  (850) 222-7339
dhealy@davidhealylaw.com

Certificate of Service

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk on July 9, 2009, using the CM/ECF filing system which will cause a copy to be electronically sent to the following counsel of record:

Brian J. Stack
Robert Harris
Stack Fernandez Anderson & Harris, P.A.
1200 Brickell Ave., Suite 900
Miami, FL 33131
Counsel to Defendant Burger King Corporation

                                                                            /s/ David P. Healy